UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HILL, JR.,

Plaintiff,

v.

CITY OF SOUTHFIELD, et al.,

Defendants.
_______________________________/

Case No. 09-cv-12373

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** (docket no. 48)

In this civil rights case, plaintiff David Hill, Jr. claims he was arrested without probable cause and with excessive force by various officers of the Southfield Police Department ("Defendants"). Discovery has closed, and all remaining defendants have moved for summary judgment on portions of the various claims. For the reasons stated below, the Court will grant the motion in part. Summary judgment will be entered in Defendants' favor on Hill's equal protection claim, as well as Hill's wrongful arrest and false imprisonment claims (state and federal). Summary judgment will not be entered on Hill's claim of excessive force against defendants Goff, Davis, Thomas, and Habel.

## BACKGROUND FACTS[1]

In accordance with the summary judgment standards, the following facts are either undisputed or, if disputed, stated in the light most favorable to Hill. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[1] This statement of facts contains only those facts relevant to the claims on which Defendants seek summary judgment. There are additional disputed facts, but they are not material to the claims that are the subject of Defendants' motion.

During the afternoon on January 25, 2008, several police officers were conducting surveillance at the Providence Hospital employee parking lot in Southfield, Michigan. Porter dep. 11. There had recently been an increase in vehicle thefts from the lot, and the hospital's head of security requested that the Southfield Police Department monitor the parking lot. *Id.* During the surveillance, officers in two semi-marked police vehicles began following a suspicious red Jeep out of the parking lot and onto various roads. *Id.* at 18. The Jeep raised suspicion with the officers because Jeeps have a high incidence of theft, the Jeep had been "lurking" along a fence line in the hospital parking lot without an apparent purpose, it made various traffic infractions right after leaving the lot, and the driver and passengers appeared to be teenagers and school was in session. *Id.* at 22-24. When the Jeep and the police vehicles reached Greenfield Road, the officers turned on the overhead lights in an attempt to pull the Jeep over, but the Jeep ignored the lights and continued driving. *Id.* at 18.

The Jeep eventually "spun out" and ended up in the front yard of a residence on Stansbury Street, between Curtis Avenue and Thatcher Avenue, in Detroit.[2] *Id.* at 19. Sergeant Lawrence Porter saw several young black males dressed in dark clothing flee from the vehicle. *Id.* at 20, 27-28. Porter was able to apprehend one suspect as the suspect exited the Jeep's driver's side, but two or three other suspects managed to escape. *Id.* at 20. Officers pursued the other suspects on foot through the yards between Ardmore and Stansbury streets, near where the Jeep had come to rest. McCormick Police Rep. 2. Multiple officers were reporting to the others via radio communication that the suspects were dressed in dark clothing. Porter dep. 27-28.

---

[2] A map of the neighborhood in which the Jeep came to rest is attached to Defendants' motion as exhibit 3.

The very same day, plaintiff Hill was at a friend's house on Ardmore Street retrieving a mobile phone charger. Hill dep. 42. Upon leaving the friend's home, Hill saw officers and a "bunch" of squad cars, and "heard a lot of commotion going on." *Id.* at 43, 45. Hill panicked and attempted to run back to his aunt's home a few houses over, on Ardmore Street. *Id.* at 43. He hopped two fences and ran through a backyard before reaching his aunt's home. *Id.* at 53.

Officer Matatall was one of the officers who apprehended Hill and eventually arrested him. Smiscik Police Report, 2. Matatall briefly observed two or three suspects exit the Jeep, and saw them run through a backyard. Matatall Dep. 24. Matatall testified that the suspects were three black males in their mid to early twenties, but he did not get a good facial description of the suspects when they fled from the Jeep. *Id.* at 26. He first saw Hill approximately two to three blocks away from where the Jeep came to rest and the suspects first fled. *Id.* at 43. Matatall saw Hill jump a fence and later apprehended him between two houses. *Id.* at 24. Matatall testified that he believed Hill was one of the suspects because Hill ran in the direction away from where the stolen car came to rest, fit the clothing description of the suspects, did not stop when ordered by Matatall, looked in Matatall's direction and could observe him in a police uniform, and jumped a fence in an attempt to escape. *Id.* at 25-26.

Smiscik was the other officer, along with Matatall, who apprehended Hill. Smiscik Police Report, 2. Smiscik also saw the Jeep come to rest and saw two to three black males flee the vehicle. Smiscik dep. 10. He first saw Hill between Ardmore and Stansbury, dressed in dark clothing, hopping fences, and running away from him through various yards towards Thatcher Avenue. *Id.*

Hill was arrested and taken to the Southfield Jail, where he was fingerprinted and processed. Hill dep. 89-90. He was later transferred to the Oakland County Jail because it had a medical facility and Hill told officers he was epileptic. *Id.* He was interviewed at the Oakland County Jail, where he admitted that he had smoked marijuana and then panicked when he saw the officers in the neighborhood before fleeing from them on foot. Hill was released and driven home. He was never charged with a crime.

**PROCEDURAL POSTURE**

Hill filed this action in state court and it was later removed. The complaint alleges constitutional and common law torts by the City of Southfield and some of its police officers, as well as the Village of Beverly Hills and one of its police officers. The Beverly Hills defendants were dismissed with prejudice in a stipulated order. Hill now agrees to the dismissal, with prejudice, of all claims against the City of Southfield, Jason Schneider, Katie Schneider, Jared Lanzon, David McCormick, Kevin Kerr, and Lawrence Porter. Pl.'s Resp. Br. 6-8,17. Because Hill has failed to identify the John Doe named in the complaint, all claims against defendant John Doe will be dismissed as well. *See Petty v. County of Franklin, Ohio*, 478 F.3d 341, 345-46 & n.2 (6th Cir. 2007) (affirming dismissal of John Doe defendants when plaintiff failed to identify them after discovery). Hill also agrees to the dismissal of his claims for malicious prosecution, abuse of process, and violation of his federal procedural and substantive due process rights. Pl.'s Resp. Br. 8-9, 18.

Thus, after all concessions and stipulations, the only claims still at issue in Defendants' motion for partial summary judgment are 1) Hill's claims for violation of the Equal Protection Clause; 2) Hill's claims for excessive force / assault and battery against defendants Goff and Davis; and 3) Hill's claims against all remaining defendants for

wrongful arrest and false imprisonment in violation of both the Fourth (and Fourteenth[3]) Amendments and the Michigan common law.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### II. Analysis

#### A. Equal Protection Claim

Hill complains in vague fashion that Defendants deprived him of his right to equal protection under the law. In response to Defendants' summary judgment motion challenging this claim, Hill says that the only reason Defendants arrested him was because he is a black male. At the Court's invitation to both parties at the hearing, Defendants have filed a supplemental brief addressing Hill's equal protection claim. Hill did not.

---

[3] By reason of incorporation, Hill's Fourth Amendment claim is really a Fourteenth Amendment claim. *See Wolf v. Colorado*, 338 U.S. 25, 28 (1949), *overruled on other grounds*, *Mapp v. Ohio*, 367 U.S. 643 (1961) ("[W]e have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment.").

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). It prohibits the States from making distinctions that burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The plaintiff must show that the defendant acted with a discriminatory purpose, which means proving that the defendant undertook a course of action "because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (internal quotation marks and alterations omitted).

Although the government retains broad discretion in deciding whom to arrest and prosecute, that discretion is not unfettered, and selectivity in the enforcement of criminal laws is subject to constitutional restraint. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). The mere enforcement of an otherwise valid law provides a means of violating one's right to equal protection under the law. To address this problem, courts have developed the doctrine of selective enforcement. *Gardenhire v. Schubert*, 205 F.3d 303, 318-19 (6th Cir. 2000). In addition to serving as a defense in a criminal prosecution, selective enforcement can lead to section 1983 liability if the plaintiff can show purposeful discrimination. The presence of probable cause does not bar an equal protection claim. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment."); *United States v. Avery*, 137 F.3d 343, 352 (6th Cir.1997) ("The Equal

Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures.”).

To establish a claim of selective enforcement based on race, the plaintiff must show 1) a government official singled the plaintiff out as belonging to a certain race for arrest even though the same government official decided not to arrest other similarly-situated persons not belonging to the plaintiff's race; 2) the official initiated the arrest with a discriminatory purpose in mind; and 3) the arrest had a discriminatory effect upon the racial group to which the plaintiff belongs. *Gardenhire*, 205 F.3d at 319. Meritorious claims of selective enforcement are rare. *See, e.g.*, *Stemler v. City of Florence*, 126 F. 3d 856, 873 (6th Cir. 1997) (“We believe that this is the rare case in which a plaintiff has successfully stated a claim of selective prosecution.”).

To satisfy the first and third elements of a selective enforcement claim, a plaintiff must make a prima facie showing that similarly-situated persons outside his race were not arrested. *Gardenhire*, 205 F.3d at 319. He can do so by naming a similarly situated individual who was not investigated, or through the use of statistical or other evidence. *Farm Labor Organizing Comm. v. Ohio State Highway*, 308 F.3d 523, 534 (6th Cir. 2002). There is a strong presumption that officers have properly discharged their duties, and a plaintiff must come forward with clear evidence to the contrary in order to rebut this presumption. *Gardenhire*, 205 F.3d at 319. The standard is demanding. *Id.*

Hill cannot establish the first and third elements of his claim of selective enforcement. His only support for his equal protection claim is to state anecdotally that he would not have been arrested if he were not black. *See* Pl.’s Resp. Br. 10-11 (“Clearly, if Plaintiff had been an older person, a female or white, one would presume that he would not have been

chased, would not have been tasered, and would not have been kicked."). But Hill is speculating. He has offered no evidence that Southfield officers declined to arrest non-black males for crimes committed in their presence. Nor has he offered any statistical or other evidence that addresses the "crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Chavez v. Ill. State Police*, 251 F.3d 612, 638 (7th Cir. 2001). Although the officers' racial epithets might assist in establishing a discriminatory *purpose*, without a showing of discriminatory *effect*, Hill's selective enforcement claim fails. *See Wayte v. United States*, 470 U.S. 598, 608 (1985) ("Under our prior cases, these [equal protection] standards require petitioner to show both that the passive enforcement system had a discriminatory effect *and* that it was motivated by a discriminatory purpose." (emphasis added)).

B. <u>Remaining Claims Against Goff, Davis, Thomas, and Habel</u>

Goff and Davis seek summary judgment on Hill's claim against them for excessive force / assault and battery, on the basis that they were not personally involved in the alleged conduct giving rise to Hill's claims.[4] To recover under § 1983, a plaintiff must prove facts that show that an individual was personally involved in the deprivation of the plaintiff's civil liberties. *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). In the excessive force context, this does not mean that the officer must have had actual contact with the plaintiff; officers who witness the use of excessive force but fail to intervene may also be liable under § 1983. *See Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006). The

[4] Thomas and Habel also sought summary judgment on the excessive force claims on the ground that no evidence placed them in Hill's vicinity when he allegedly was assaulted. At the hearing, however, defense counsel conceded that Hill's testimony that Habel and Thomas were present when he allegedly was being assaulted, *see* Hill dep. 85-86, precludes the entry of summary judgment on these claims. The Court credits and thanks defense counsel for being realistic about the evidence in the case and causing the Court not to have to decide matters not in controversy.

plaintiff must show that 1) the officer observed or had reason to know that excessive force would be or was being used, and 2) the officer had both the opportunity and means to prevent the harm from occurring. *Id.*

1. <u>Failure to Investigate</u>

Neither Sergeant Goff nor Officer Davis were involved directly in Hill's foot chase or handcuffing. Goff arrived just after Hill was detained and saw him resisting. Goff dep. 18. He does not remember if officers other than Matatall and Smiscik were present. *Id.* He spoke with Hill's aunt, who owned the home at which Hill was arrested, and directed Officer Davis to obtain a written statement from her. *Id.* at 29; 34-35. He then arranged for Hill's transportation to the Southfield jail. *Id.* at 54.

Officer Davis arrived at the scene when Hill was in handcuffs and sitting on the ground. Davis dep. 48. He took photographs of the red Jeep and took a written statement from Hill's aunt and uncle. *Id.* at 26, 40.

Goff and Davis contend that they are entitled to summary judgment because neither was directly involved in the determination of probable cause and later arrest. Hill contends that because Goff and Davis had an opportunity to convey to the arresting officers that Hill's aunt and uncle had told them Hill was not involved in any car theft ring, both bear responsibility for not doing so. Hill also charges Goff and Davis with failing to question Hill's mother, who apparently would have provided Hill an alibi.

Hill's arguments are foreclosed by Sixth Circuit precedent. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999); *see Klein v. Long*, 275 F.3d 544, 552 (6th Cir. 2001) ("But once a police officer has sufficient probable cause to arrest, he need not investigate further."). Because, as

discussed below, no jury could find probable cause lacking, there was no duty to further investigate Hill's potential involvement in the auto theft before taking him to jail.

2. Excessive Force and Failure to Intervene

Goff and Davis also contend that they are entitled to summary judgment on Hill's claims for excessive force because they were not present when Hill was allegedly beaten. Hill does not specifically remember the presence of Goff and Davis, but remembers that approximately seven officers were engaged in the use of excessive force against him. Hill dep. 85-86. This group would have included Davis and Goff, both of whom testified that they were present at the time that Hill claims he was beaten. Specifically, Davis testified that he arrived when Hill was in handcuffs and being monitored by other officers. Davis dep. 48-49. Goff testified that he arrived and actually saw Hill resisting arrest. Goff dep. 17-18. Hill testified that he was thrown on the ground, punched in the jaw, and dragged to the police cruiser before *and after* being placed in handcuffs. Hill dep. 79-80. Accordingly, there is an issue of fact as to whether Goff and Davis were present when Hill allegedly was assaulted. Because there is testimony suggesting they were present, and because Hill testified that no less than seven people were assaulting him, a jury could find that Goff and Davis assaulted Hill, or at least that they were present and could have intervened to prevent one or more of the assaults. Accordingly, summary judgment is not appropriate on Hill's claims against Goff and Davis for excessive force / assault and battery.[5]

C. Wrongful Arrest and False Imprisonment

[5] Because Goff and Davis arrived after Hill had been shot with Taser, however, neither can be liable for failing to prevent the use of the Taser.

Defendants seek summary judgment on Hill's claims for wrongful arrest and false imprisonment because no jury could conclude that probable cause was lacking for Hill's arrest. The Court agrees.

"In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). "A police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley*, 291 F.3d at 872. Stated differently, probable cause exists if, at the moment of arrest, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citation omitted). Probable cause requires neither evidence that is completely convincing nor evidence that would be admissible at trial, *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008), but only evidence that supports a *probability* of criminal activity, *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

Probable cause is assessed from the perspective of a reasonable officer on the scene, rather than from the 20/20 vision of hindsight. *Klein*, 275 F.3d at 550. A court must consider the totality of the circumstances, considering only the information the officer possessed at the time of arrest. *Parsons*, 533 F.3d at 501. Whether there is probable cause for purposes of a section 1983 action is a question for the jury, unless there is only one reasonable determination a jury could make. *See Klein*, 275 F.3d at 550.

Hill was arrested because the officers believed he was one of the suspects involved in stealing the Jeep. No jury could find that the officers lacked probable cause to believe that Hill was involved in the auto theft in light of the following facts: the Jeep came to rest

in the neighborhood in which Hill was present, Porter dep. 19; two or three suspects fled from the Jeep into Hill's neighborhood, *id.* at 20; Hill fit the description of the suspects, in that he is a young black male and dressed in dark clothing, Matatall dep. 37; Smiscik dep. 10; when officer Matatall first saw Hill, it was only two to three houses away from where the Jeep had stopped and the suspects had fled, Matatall dep. 26; Hill was running from officers through backyards and jumping fences in a direction away from where the Jeep came to rest, Hill dep. 51, 53; the officers yelled out "there go one of them right there," which Hill admits he heard, demonstrating that the officers believed he was one of the suspects from the Jeep; Hill dep. 53. The fact that none of the officers got a good look at the suspects' faces when they fled from the vehicle only strengthens the officers' finding of probable cause here, because without a precise description of who the officers were looking for in the neighborhood, they had even less reason to exclude Hill as a suspect. After hearing these undisputed facts at trial, the only determination a jury could reach is that the officers had probable cause to believe that Hill was involved in stealing the Jeep.

Whatever facts came to light *after* Hill was arrested for the theft are irrelevant to the question of whether the officers had probable cause when Hill was arrested. *Klein*, 275 F.3d at 552. Moreover, the officers were not required to credit Hill's protestations of innocence and conclude that he was not involved in the theft. *See Criss*, 867 F.2d at 263 ("A policeman, however, is under not obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").

Viewing the evidence in the light most favorably to Hill, the Court conclude that a jury would have no choice but to find that probable cause existed for his arrest.[6] Accordingly, Defendants are entitled to summary judgment on Hill's claim of wrongful arrest. Since Hill's false imprisonment claim is predicated on his wrongful arrest claim, Defendants are entitled to summary judgment on Hill's claim of false imprisonment as well.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for partial summary judgment (docket no. 48) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED THAT** pursuant to the agreement of the parties, claims against the following officers are **DISMISSED with prejudice**: City of Southfield, David McCormick, Lawrence Porter, Katie Schneider, Jared Lanzon, Jason Schneider, Kevin Kerr, and John Doe;

**IT IS FURTHER ORDERED THAT** pursuant to the agreement of the parties, Hill's claims against Defendants for violation of his substantive and procedural due process rights, as well as for abuse of process and malicious prosecution are **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED THAT** Defendants are entitled to summary judgment on Hill's equal protection claim;

**IT IS FURTHER ORDERED THAT** Defendants are entitled to summary judgment on Hill's constitutional and common law claims of wrongful arrest and false imprisonment.

---

[6] Because a jury would conclude that probable cause existed, there is no need to rule on Defendants' motion for summary judgment as it relates to the defenses of qualified and governmental immunity.

**IT IS FURTHER ORDERED THAT** Defendants are not entitled to summary judgment on Hill's claims against Goff, Davis, Thomas, and Habel for excessive force / assault and battery.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 22, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 22, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager